Our third case of the afternoon, People of the State of Illinois v. Ermakov, 410-0931. For the appellant, Mr. Richards, for the appellee, Ms. Brooks, you may proceed. Thank you, Your Honor. My name is Stephen Richards and I represent the appellant in this case, Yuri Ermakov. I'd like to give you a brief capsule of the procedural posture in this situation. Yuri Ermakov was a part-time assistant gym coach at University High. He was charged first with three counts involving SG, the count he was convicted of, and some other counts involving other young women. During the course of the proceedings, eventually there was a change of judge and prosecutor, and more charges were added. All of these charges involved very diverse times, places, and incidents. And the major charge of which he was convicted, the charge involving SG, was really apart from all the others. It involved an alleged relationship between the two of them, which included, according to her, at trial, digital penetration. It didn't involve provision of alcohol. It didn't involve the other young women. The relationship was ended by approximately February. And then there were some other incidents, allegedly, which were also charged involving provision of alcohol to young women and sexual fondling of young women that occurred in March and April, just before this was all uncovered or discovered. Now, prior to trial, Defense Counsel did not move to sever any of the counts, despite the fact they involved diverse women, times, and places. Yuri Emmerichov went to trial on all of the counts. He was convicted of some counts involving alcohol, which are misdemeanors, but in terms of the sexual counts, he was only convicted of one, the counts, the most serious, involving SG, vaginal penetration. He was acquitted of two of the other counts of attempted aggravated sexual, criminal sexual abuse, involving two of the other young women, involving fondling. Unfortunately, and it was an unfortunate decision on his part, he fled the jurisdiction, and he was gone for a number of years. But he did return before the statute of limitations on his post-conviction petition had expired. He surrendered to the authorities. He was present in court the next day after the petition had initially, actually, after the petition had been emailed to the judge before it had been filed. And then he has proceeded since. Now, I will deal with all the claims, so I want to mostly focus on the claims involving ineffective assistance of counsel with regard to severance. And the claims are interrelated, as you will see. But as to the severance claim, I would first like to deal with the substance and unreserved procedural objections raised by the State. The essence of the issue is this. First of all, did Yuri Ermakov have a right to severance of the counts? Well, he did, and no one has disputed that. Not the trial judge below, not the appellate prosecutor. Nobody says that a motion for severance, if properly presented, would have been denied. And in fact, under People v. Walston, and the case law, it would have been granted, because these were separate incidents, remote as to time and place. So that apparently is not in dispute. What is in dispute? Well, as to the severance count, what is in dispute at this moment, and will be dispute if the case goes further, as it should, is whether there was some reasonable strategy motivating the attorney not to sever the counts. Or instead, was this a legal error to Yuri Ermakov's detriment, and there was no reasonable trial strategy. Those are the two positions. As Your Honor is well aware, at the first stage of a post-conviction petition, which is where we are now, the issue is whether looking in the light most favorable to the pleader, to the petitioner, whether the gist of a constitutional claim is made out. And that is a fairly low standard. Now, as to the ineffective assistance of counsel, there is a gloss on that from a recent Supreme Court case. What the Supreme Court has said is, looking at ineffective assistance of counsel claims, the trial judge should look at two things. One, is it arguable that defense counsel's decisions fell below a reasonable level of effective assistance, or objective standard? And second, is it arguable that the defendant was prejudiced? That's all you're looking at at the first stage. Now, at the second stage, the burden may be higher, and it may be that more is considered. Certainly at the evidentiary hearing stage, it then becomes actually a question, usually a credibility contest in terms of what actually happened and what was said. But here is the question. Is it arguable that Carol Dyson, the attorney, was ineffective for not moving to sever the counts? Now, Yuri Armakov says, and said in a statement in open court, which he signed in open court, and offered to swear to in open court, that Carol Dyson, when she was discussing this, said to him, listen, we're in a bad shape. Why are we in a bad shape? Because of this. We're in a bad shape because the strongest evidence and the most serious evidence is the count involving vaginal penetration on SG. It's not so strong that we can't win, and there are many problems with it, including SG's confusion as to time, dates, number of times, et cetera, et cetera. So it was a beatable charge. But what she said, which made sense, is that's not all we have to deal with. We're looking at a case in which you're going to be tried not only as to that charge, but to the charges involving the other girls, with providing them with alcohol, fondling buttocks, late night parties, all this stuff. What the prosecutor is going to do, she told him,  he's going to get up and paint you as an awful person. And the weaknesses on some of the individual charges and the weaknesses on the charges of SG are going to be swamped by all this detail about all these girls accusing you. Now, it may be, if we get to the evidentiary hearing stage, that Carol Dyson will have a totally different story. She could say something, for example, to the effect of, well, I discussed it with Yuriy Armakov. I told him he had a right to severance. I said, you know, maybe we should get it over in one shot. That's better. Or maybe it's better to go for the conspiracy theory and say the girls are all in it together. I think that's a better strategy. Why don't we do that? Maybe. But that's not the record as it exists now on the uncontradicted allegations of Yuriy Armakov. Now, in terms of the strategy, obviously, every defense counsel knows and every appellate defense counsel knows that the usual answer to claims of ineffective assistance is trial strategy. And appellate prosecutors and courts have often been very imaginative and very discerning in discovering trial strategies to support various defense counsel decisions. In this particular case, in fact, there are different strategies suggested by the appellate prosecutor than were suggested by the trial judge. The appellate prosecutor mainly says, this is the strategy. The strategy is this. She as a reasonable defense counsel could say to Yuriy Armakov, listen, we are... the best bet is... you know, the best bet is let's put these all things together and we'll say it's all a big conspiracy. And that's our best strategy. That's essentially what the state appellate prosecutor said in her brief. There's two problems with that. One is it's not supported by the record as we have it. It's an inference which is contradicted by Yuriy Armakov's affidavit, number one. Two, I think it raises real questions, particularly with respect to People v. Brocksmith, as to whether this is a decision that could be made by the trial attorney over the client's objections. Because in effect, what you're saying is that in a Brocksmith case, let's go for the lesser. Let's hope they convict you on the lesser charges. It's almost like pleading guilty. It has some flavor of pleading guilty. If that's what happened, then it's something that one might presume the defendant would agree to, and that's been done in Brocksmith cases. But he has directly contradicted it and said he never agreed to such things and never heard of a severance. Now, the appellate prosecutor makes two other arguments with respect to the severance argument. One is that the petition is unsupported by affidavit as required under the statute. Now, to respond to this, I've responded in my reply brief, but you have to understand what the situation was. Usually the situation is a prisoner without counsel is sitting, drafting his petition in the penitentiary, and then he goes to get somebody, he signs it, and gets it notarized. And the notary is a notary certified, the portraits of notaries, saying this person signed this document. That's what a notary does. So that would be the point of that. In this particular case, Yuri Ermakov was returning from Russia, and I put this on the record on that day. He hadn't had a chance to get an affidavit done, because there are no, apparently, notaries, or at least notaries that we understand in Russia are non-accessible. So instead, in open court, I said, he's signing it now, in front of you all, and could he please swear to it? The whole thing. Swear to it, under oath in open court. And the trial judge said, no, that's not necessary. In this circumstance, I think the basic purpose of the requirement was met, and could have been more met, in that Yuri Ermakov was not just making things up, he was saying, I swear to it, and I'm offering to swear to it. The second point that the prosecutor makes with respect to the severance claim is that there was a typo in the original petition between counts 6 and 7. And that was confusing. However, it did not confuse the trial judge. He noted it, but he went on to consider the severance issue and all of its ramifications, and made up his own issues as to what the strategy might have been. It's kind of, he doesn't say it's a question of going for the lesser offense, he says it's a question of, a reasonable attorney might have thought that all the girls are together, the lies are kind of, we can say it's a conspiracy. And that's, in fact, what she did. But, as you know, Your Honor, conspiracy theories are the hardest to make and the hardest to prove. They're kind of the last resort, not the last refuge of scoundrels, but the last resort of defense counsel at trial. I have, you know, been some police officer in certain seizure cases, and sometimes resorted to it, and if you have nothing else, you have nothing else. But, as to the major charge against the SG charge, she didn't have to do that. Had the charge been severed, had it been tried on its own, there would have been no need to say all the girls are in a conspiracy. Then the attention would have focused on SG's prior inconsistent statements, her vagueness as to when and where the penetration took place, and that, I suggest, would have led to a reasonable probability, not a certainty by any means, but a reasonable probability that there would have been a different outcome. Or at least it's arguable that there's a reasonable probability. And that's all we need to show at this stage. So the clerk wrote a 34-page opinion? He did. What was he wrong? Well, he was wrong in many instances, and I wish I had gotten there. Specifically, just give me a few of them instead of talking. Okay, all right. In terms of where he was wrong, for one thing, he said numerous times that the issues were waived because they had not been raised on direct appeal, which is directly in contradiction of People v. Rose, which says that where no direct appeal is filed, there is no waiver. As to the severance issue, he was wrong because, and he admitted he could be wrong. He said, I might be wrong about this. He said, I don't really know what the arguable standard means, but I don't think it was arguable. He said, I don't think it's arguable that she made a mistake, that her strategy was wrong. And he was making up her strategy. Throughout the opinion, by the way, he made up strategies which were not supported by direct appeal. For example, he said, well, defense counsel may have looked at the witnesses and decided not to object to various hearsay because she saw the witnesses in court and made on-the-fly strategic decisions as to what the witnesses would bid. This is an interesting observation, but it's an observation for the third stage where she would go and testify, okay, this may look like a crazy decision not to object to hearsay, but I was there. I saw these witnesses. I saw the jury. I was making decisions on the fly. The major point, I think the judge made a mistake. Thirty-four pages is certainly very diligent. But on the other hand, if he takes 34 pages to refute a post-conviction petition, isn't it arguable that what's in the petition should not be dismissed at the first stage? Why not? It should be a lot easier than that. Why not? Well, because if it's clear, patently obvious, that it should be dismissed at the first stage, it doesn't need 34 pages to say it. Now, part of 34 pages has to do with the number of claims. But in any event, much of what he has in the opinion are things that the prosecutor may argue at the second stage, things that defense counsel may say under oath at the third stage, but do not belong in a first-stage petition, which is why 34 pages may seem impressive, but you're not required to give deference to it. The standard, as you know, Your Honor, on this issue is de novo review. Because of defendants' alleged conduct, could the trial judge have concluded that even if severed, much if not all of this other evidence would have come in anyway? The answer to that question is no. And there are a couple of reasons for that. First of all, you have to look at, depending on the charge. Well, okay, the sex charges. Yeah. Each of those allege a position of authority. Right. Did he come into contact with each of these young women, allegedly, as a result of his position as the gym teacher at University High? Okay. Did he? Well, actually, the answer to this question is no. Most of them were not his students. In fact, I think all of these claims were people who were not his students. They were not his personal students. They were students that happened to be there. Number one. But the statute applies if you're a student in the school. Absolutely, yes. But, I mean, in terms of you're saying a common pattern. No, I just meant that they were students at the school. Well, you mentioned they were students at school. They're students at school. But that wouldn't be enough for the pattern as far as you're concerned. Not as SG. Because the other instance may go together. For example, a lot of the instance involving provision of alcohol and AD happened at one time and place. So that goes together. SG, however, doesn't involve any alcohol. None whatsoever. It doesn't involve contact with any of the other students, except peripherally with SG's sister, who knows a little bit about the SG relationship and is involved in some of the other instances. Not as with sexual contact, but just being there. The incidents. So a pattern in practice wouldn't, or common behavior, I don't think they would have been admissible on those grounds. It wouldn't also have been admissible under 115-7.3 because that doesn't apply to the alcohol incidents. And it doesn't apply to attempt to aggravate criminal sexual abuse because that's not included in 115-7.3. That was sort of never taken up. I did file a memorandum which argued that issue below, but nobody ever took it up. So if the judges should reach out for that, my response is in the record. The other point is that even let's assume for the moment that other incidents are admitted as other crimes. First of all, they're not necessarily going to be admitted. It's the trial judge's discretion, number one. Number two, there's none of this problem of the jury finding him guilty of one and not other because they're not other charges, so it's different than severance. Number three, there are limited as to detail and scope as, for example, in the Cardamone case. So it's a quite different situation even if you assume that some of this would have come in. And again, that's not what you told Yuri Yermakov, it's coming in anyway. She said, this is the way it is and this is the game we have to play. If there are no further questions, I would reserve, if I have any remaining time, I reserve for Rebecca. We'll hear from you on rebuttal. May it please the court and counsel, my name is Anastasia Brooks and I represent the people in this case. First of all, I would like to talk about one of the threshold issues, the lack of a valid affidavit and the fact the petition was not verified as required by the statutes, sections 122-1B and 122-2. And essentially a defense claim here as well because of the circumstances, he wasn't able to secure a notary for his affidavit, but yet that's a consequence of the fact that he fled to Russia for three years where he makes the complaint though that, well, if there aren't any legal notaries in Russia, that's actually his fault. I mean, it's not a situation where, if he had been in a situation where, like most other defendants, he would have obeyed the judgment, the verdict, and respected the sense of the court and spent his time in the prison, he wouldn't have had any trouble getting his affidavit notarized and his post-conviction petition timely filed. So it's also blaming the trial court for declining his offer to swear to the affidavit in open court, but yet, again, he's not going to be in the typical position of most prisoners where they're not standing right before the court presenting their post-conviction petition to the judge. And it's not the trial court's duty to give legal advice to the defendant on how he must properly prepare his post-conviction petition. It also complains that the prosecution didn't object. Well, of course, this being the first stage of post-conviction petitions, it's not the prosecution's role to respond to the defendant's post-conviction petition. So the prosecutor's role is not to intervene inside first-stage review by the trial court. So, although this does present somewhat peculiar facts, this state does request this court to apply the Nisgoda and Carr holdings to show that an affidavit not properly notarized or not notarized is not an effective affidavit, a legally effective affidavit, for purposes of the Post-Conviction Hearing Act. And so, therefore, his allegations of ineffective assistance of counsel lack the appropriate support in an affidavit that's required in order to survive first-stage review. Are you bothered at all by the actions of the trial court when presented with an offer to have the defendant sworn and sign a piece of paper right then, and the trial court said, no, he's here, it's no problem? I'm not sure if the defendant cites any authority to show that that would have been an adequate substitute for an actual notary, and there's no showing there was a notary. I understand that, but don't you see a little bit of a fairness problem there where the trial court may have unintentionally, perhaps, misdirected the process to deprive the defendant of an opportunity to be heard? I understand, Your Honor, although the trial court didn't have any duty to advise the defendant and the fact that if there was no opportunity for him to obtain the notary at that point anyway, it would have been harmless because the defendant would have to point to some authority to show that an in-court swearing would have been an adequate substitute for this notarization requirement. And if he doesn't point to that, then that issue of, well, what did the trial court tell him isn't really as important because there's no showing also there was a notary in the courtroom that he could have obtained at that point before he put his petition on file. And he didn't seek to amend his petition either afterwards during the 90-day review that was reported to the trial court. He could have amended it later if that was something that he felt like he needed to do, but he wasn't able to do that very day. Again, he didn't attempt to do that. Well, my point is the trial court may have faked him out, unintentionally faked him out of saying, no, he's here, it's fine, you don't need to worry about that. I understand, Your Honor, except I didn't see the trial court's responses actually telling him he doesn't have to have a notarized affidavit and advising him as to the requirements for filing a post-conviction petition. I understand the point of, yes, he was being misled somewhat by the trial court and that there is some fairness concern there, but again, it's a situation where the law is clear as to what he has to do and he failed to do it, and that's essentially what he's stuck with because he could have maybe offered him in. So, with respect to the one reason why the defendant complains that I'm holding him to a second stage standard throughout my brief and explain the reason why I do that is because when I open his brief and I look also at the end of his reply brief, he's requesting remand for second or third stage proceedings on all claims in his petition. So, it's a situation where he's essentially asking for the relief that would mean that his petition would have to have met the standard. In fact, every single claim of his petition would have had met the standard that would have applied at second stage review upon a state's filing of a motion to dismiss, for example. And so, it's for that reason that the state does analyze this petition as if it had in fact reached a second stage of review because really what the procedural posture of this case is different from a typical pro se petitioner because the defendant had counsel. His post-condition petition was prepared by and signed by the defense attorney. So, it's not a situation where he's simply trying to get it remanded so he can have counsel appointed for him. But it is, of course, a valuable right if he wants to get a remand, if he can in fact show he's entitled to one for at least second stage proceedings because then he would have an opportunity to amend the petition, obtain additional affidavits, and maybe seek discovery. So, it's still an important right. And I'm not sure by asking for a third stage remand, the defendant is really wanting this court to subject his post-conviction petition to a de novo review as if this had been an appeal from a second stage dismissal. I'm not sure that's what the defendant wants this court to do  and he's not going to amend his petition except, of course, he cites this typo. It would be a situation where if this court remanded for second stage proceedings, but yet his petition is plainly insufficient to survive second stage motion to dismiss. And, of course, we do intend to file a motion to dismiss in the second stage if it got to that point. Essentially, then that's going to be appealed and then this court will have the case back and you will now be in the position, Your Honors, of ruling as a matter of an appeal from a second stage dismissal. So, essentially, we could repeat this exercise at some future date. But, essentially, that's why I was just trying to respond to the fact that he's claiming he should get a third stage evidentiary hearing on any or all of his claims and that's the reason why the state engages that analysis. With respect to the severance issue, which the defendant puts forth as his strongest issue, and it appears that that may have... It does appear to be his strongest issue, but the question is, is it at least arguably meritorious? And that is a close and difficult question and it is de novo review. And if that is ruled on in the defendant's favor, then it seems like the whole petition would go back for second stage proceedings. However, there are strong arguments against the merits of this issue, particularly the trial strategy arguments. The defense claims that we're casting this trial strategy as being this big conspiracy is what the defendant characterized it as. If you read my brief, that's not exactly what we say the defendant's strategy was. And I don't know if they're also accusing us of making this up. I drew upon the strategy that was apparent from the closing argument and the cross-examination of the witnesses, particularly the main complainant, SG. So the strategy was, if I could clarify, was that the defense needed some way of explaining to the jury when he has basically hardly any strong means of contesting the fact that he had a romantic relationship with somebody who was 14 and just turned 15. Particularly in the light of the emails they presented where he talks about kissing and things like that. So essentially, he has to try to explain to the jurors why. In light of the evidence, he had a romantic relationship for several months with a 14-15 year old. He did not, however, according to him, digitally penetrate her vagina, which was the charge. So in order to rebut that, the defense took the tactic of saying, well, she's denying penetration for several times, and then she's brought into the third interview. And the third interview was prompted by the fact that the defendant was now arrested. What was he arrested for? He was arrested for the allegations of misconduct, the alcohol and fondling, as to the other girls, not SG. So essentially, the allegation of the defense was, what prompted her to develop, if she's trying to protect Yuri Irmakov, why does she now say something that would actually get him into really serious trouble? And the claim was, well, now she, the defense theory was, she is now angry. SG thought she was the only girl of defendant, and that now she understands that there's all these other girls that he was having interests with. And that is the reason why, according to the defense, that she made up this allegation. So that is the strategy. Now, besides Brocksmith, Brocksmith is not a case dealing with sovereigns. It's dealing with submitting uncharged offenses to the jury, considering it's part of the defendant's responsibility to decide whether he should be exposed to liability for uncharged offenses. Now, this is unlike Brocksmith, because we're dealing with two sets of charged offenses. So, it's not a situation like Brocksmith, and therefore, the decision whether to seek severance is, in fact, responsible, is defense counsel's responsibility, which means that he cannot evade the strict land standard. Now, with respect to other crimes evidence and whether it would have been admissible, it's not necessarily a requirement that other crimes evidence, the fondling and alcohol incidents, had been admissible. It's what would a reasonable attorney, in that situation, deciding whether to move for severance, would have believed at the time. It's uncertain, perhaps, whether 115-7.3 would have admitted this as propensity evidence, even though the charge was only attempt. That's a risk the defense would have had to have taken. Also, it's a situation where the defendant, by joining me for trial, has gained an opportunity for juror compromise. It's not a situation where he could have perhaps submitted a lesser-included defense instruction onto the charge of criminal sexual assault of SG. So, therefore, it's a situation where he may feel like, that the juries might perceive that he's plainly guilty of something, because he's involved romantically with his students who are underage, and therefore seek to convict him, even if the case is arguable that he should be acquitted. However, rather than run that risk of going all or nothing, allow the prosecution to slip in the other charges, and that gives the jury an opportunity to compromise an important right of the defendant that he would not otherwise have had if he insisted on a severance. And so it's a situation where some hypothetically competent attorney could have desired on a joint trial. Whether Carol Dyson, his trial counsel, had desired that or not is not really the point, because even if he were to get a new trial, his new attorney, who's competent and may fully understand his severance rights, may reach the exact same decision that Carol Dyson did, and permit the prosecution to go forward with a joint trial. However, of course, at this point, that's not entirely possible, because he has been acquitted on the attempt charges, so those would not be retried. And with respect to the hearsay allegations, again, some of these hearsay went to the attempt abuse charges, which he was actually acquitted of, so there would be no prejudice. Also, the reasons for admitting some of these hearsay is it goes, again, to the trial strategy of connecting S.G.'s allegation of penetration with learning information in misconduct, defendant's misconduct with the other girls. And that was an important central focus of the defense strategy, and that was clearly reasonable, especially in light of the strong presumption of reasonableness that applies under Strickland review. So, also with respect to the closing argument, the defendant has to show that any errors in closing argument were so substantial that the prejudice would be so substantial that he likely would have been acquitted had those references in the closing argument not been made. So, with those respects, the state does request the first stage dismissal to be affirmed in its entirety, and of course, if he is entitled to any remand, it would only be for second stage proceedings where the state does intend to file a motion to dismiss the entire petition. If this court has no further questions, I thank you for your time. Thank you. Rebel? Yes, just to clarify a few things. One is that the defendant did sign the affidavit in court, and it's recognized that he did sign it in court, and it's signed. It was signed in front of everyone. He offered to swear to it in addition. So, the only thing that is not there is a notary stamp saying, this is the signature of Yuri Irmakov. But the record is clear that it's Yuri Irmakov's signature in front of a judge and everybody else. So, again, I don't think that is grounds to defeat the petition, or should be grounds to defeat the petition. Counsel does concede that as to the severance issue, it's a close question. And I think the way the statute is worded or is intended on first stage review, where there's a close question, you move on to the second stage. Now, counsel makes another argument that because it's a counsel petition rather than an uncounseled petition, that therefore a different standard should apply. This is the first time I've heard this argument from her, but I know there's case law on this point, which says that you're not supposed to treat them differently. I would ask leave of the court to file supplemental authority after the argument, just to make that clear, because there is supplemental authority on that point. And I don't want to mention anything and break the rules of oral argument, but I could demonstrate that, and hopefully I will do that by motion. So, counsel is right, and I stand rebuked that we asked for moving on to the third stage. I realize that may not be the most appropriate thing. The extent that counsel believes that's given her grounds to argue a different standard, I retract that request and just ask that it be moved on to the second stage, where we will seek to amend and all claims can be adjudicated upon a properly filed and I'm sure well-argued motion to dismiss. Thank you. Thank you, counsel. We'll take the matter under advisement.